2002 OK CIV APP 34

COMPONENTS MANUFACTURING COMPANY and Old Republic Insurance, Petitioners,

v.

Charlene FUGATE and Workers' Compensation Court, Respondents.

No. 96,805.

Court of Civil Appeals of Oklahoma, Division No. 4.

Feb. 12, 2002.

Pat A. Padgett, Layman & Padgett, Tulsa, OK, for Petitioners.

Andrew Nestor, III, Tulsa, OK, for Respondent.

Opinion by JOHN F. REIF, Chief Judge:

¶1 Employer and Insurance Carrier seek review of an order of a Workers' Compensation Court three-judge panel affirming the trial court finding of a job-related injury to Claimant's "LEFT THUMB AND LEFT HAND (AGGRAVATION OF A PRE–EXISTING CONDITION)." Employer and Insurance Carrier do not dispute that Claimant hurt her left thumb while working on July 5, 2000. They have stressed, however, that x-rays taken during treatment on July 5 and July 7 revealed no fractures, dislocation, osseous or joint pathology. They also note that the injury was diagnosed as a contusion or bruise and Claimant was released to return to work with restrictions that were to continue only until July 10. While on a "light duty" assignment, Claimant's performance was found unsatisfactory and she was terminated. Complaining of pain and inhibited use of her left hand after July 10, Claimant filed a workers' compensation claim on August 23, 2000. Following trial of the claim on November 7, 2000, the case was submitted without the court ruling on Claimant's request for a specialist. Then, on November 28, 2000, the court appointed an Independent Medical Examiner and later received the IME report over objections filed by both parties. The appointment of the IME after submission is the primary complaint made by Employer and Insurance Carrier on review.

¶2 Employer and Insurance Carrier believe that the trial court lacked authority to appoint an IME after submission of the case and without prior notice to the parties. They basically contend that the instant case did not come within the specific circumstance in Workers' Compensation Court Rule 18A, 85 O.S. Supp.2000, ch. 4, app., for appointment of an IME after submission. They further contend that a post-submission appointment is not authorized by 85 O.S. Supp.2000 § 17, the general statute governing appointment of an IME. They also urge that the post-submission appointment worked a deprivation of due process. Because these assignments of error involve the interpretation and application of a court rule and a statute, we

are presented with a question of law that will be decided *de novo*.

¶ 3 We begin with the text of Rule 18A. This rule provides in pertinent part:

All cases set for trial shall be tried and fully submitted for decision on the date of the trial, except those cases requiring an independent medical examiner or in which a party has elected to cure a defect in evidence pursuant to Rule 23, and in such other cases as the Court, in its discretion, may determine. Any party who is unable to submit the case on the date of trial shall advise the assigned judge prior to the commencement of the trial.

This rule plainly applies to *all* cases and the only exception provided for post-submission appointment of an IME extends to "cases requiring an independent medical examiner." We note that the rule grants general discretion to the trial court to make "other cases" an exception to the submission rule, but the context indicates that such "other cases" are cases other than those specifically mentioned.

¶ 4 To determine whether the instant case is a case "requiring an independent medical examiner," we must first determine what the Workers' Compensation Court and Oklahoma Supreme Court intended by the term "cases *requiring* an independent medical examiner" when each court approved Rule 18A. The best source for answering this question are the provisions of law that address the appointment of independent medical examiners—85 O.S. Supp.2000 § 17 and Workers' Compensation Court Rule 43, 85 O.S. Supp.2000, ch. 4, app.

¶ 5 Review of § 17 and Rule 43 reveals three general circumstances in which an independent medical examiner can be appointed: (1) by the request of one party, (2) by agreement of both parties, and (3) by the court on its own motion. One party may seek the appointment of an independent medical examiner "not less than thirty (30) days before a hearing [on a claim]." One party may also seek an IME "prior to or during any prehearing conference," in cases where permanent impairment ratings are more than 25% divergent, there is disagreement over the cause of the permanent impairment, or the employee has lost no time from work. Where both parties "stipulate" or find it "mutually acceptable," the independent medical examiner can be appointed less than 30 days prior to the hearing on a claim and in the absence of divergent medical testimony. In either the case of one party making the request or both parties making the request, an independent medical examiner can be appointed even in the absence of any medical testimony supporting or contesting an issue. Concerning appointment of an independent medical examiner on the court's own motion, neither § 17 nor Rule 43 restricts the time in which the court may make the appointment, and Rule 43 expressly allows for the appointment on the court's own motion "to assist the Court in resolving any medical issue."

¶ 6 In all but one of the instances regarding the appointment of an independent medical examiner, § 17 and Rule 43 provide that the court "may" make the appointment. The single instance in which the court "shall" make the appointment involves divergent evidence concerning the degree or cause of permanent impairment. It is reasonably clear that § 17 and Rule 43 have, by and large, left it to the court to appoint an independent medical examiner in cases where the court determines independent medical evaluation *is needed*. The existence of need for independent medical evaluation also appears to be the reason the legislature provided that an independent doctor "shall" be appointed in cases where the parties' medical evidence is significantly divergent concerning the degree or cause of permanent impairment.

¶ 7 We conclude that the appointment of an independent medical examiner is not so much a matter mandated by policy as it is a matter of necessity to enable the court to make "such order, decision or award as is proper, just and equitable in the matter." 85 O.S. Supp.2000 § 3.6 (A). Accordingly, we hold that "cases requiring an independent medical examiner" which are an exception to mandatory submission are cases *needing* an independent medical examiner, as determined by the court.

¶ 8 Because neither § 17 nor Rule 43 limit the time in which the court on its own

motion may appoint an independent medical examiner, we further hold that the court may act on its own motion to appoint an independent medical examiner even after submission of the case at the conclusion of a hearing. Such post-submission appointments are clearly contemplated by the clarifying language of Rule 43 which allows appointment "to assist the Court in resolving any medical issue." As a practical matter, the need for independent assistance to resolve a medical issue may not be fully apparent until after the court has ruled on the admission of the parties' medical evidence presented at the hearing on the claim.

■ ¶ 9 Employer and Insurance Carrier also argue that the way in which the trial court appointed the IME after submission and received his report denied the parties due process. They assert that neither party received prior notice of the court's intent to appoint an IME or opportunity to object to the appointment. They further assert that the trial court did not reconvene the hearing on the merits nor otherwise provide an on-the-record opportunity to be heard concerning the IME's report and to make objections to the report. Employer and Insurance Carrier note that the case record does not reflect that the report was ever admitted, or was otherwise included in the court record.

¶ 10 It appears that the trial court did not notify the parties of the post-submission decision to appoint an IME or give them an opportunity to object prior to the appointment. However, neither § 17 nor Rule 43 require such notice and opportunity to object when the court makes the appointment on its own motion to assist in resolving a medical issue.

¶ 11 There is no question that the parties were notified that the appointment was made and that they received copies of the IME's report dated March 23, 2001. Also, each party filed a written objection to the report of the IME. The objection filed by Employer and Insurance Carrier challenged the IME's report "on the grounds and for the reason that it is a Court medical." The "reasons" stated in Claimant's objection to the IME's report generally asserted "inaccurate or incomplete history," "otherwise without probative value," "inadmissible hearsay," "[im]properly evaluate[s] the Claimant's impairment or disability" and "assumes facts not in evidence." Each objection reserved the party's right to depose the IME, but each also defers that right until further notice. The record fails to show that either party ever gave notice to depose the IME.

¶ 12 After the objections were filed, counsel for Employer and Insurance Carrier filed a Form 13 "Request for Pre-Hearing Conference" to address the issues of "Treatment and TTD per Court appointed physician's recommendations of 03–23–01." The parties agree that a hearing was held on May 15, 2001, and that the trial court issued the Order Awarding Temporary Total Disability Benefits after this hearing.

¶ 13 Even though counsel for Employer and Insurance Carrier used a Form 13 intended for use to request a "pre-hearing conference," we find that this was an effective vehicle to reconvene the hearing on the merits and that it gave express notice that the matter to be heard was "Treatment and TTD per Court appointed physician's recommendations of 03–23–01." The hearing that was set on May 15, 2001, in response to the Form 13 motion, afforded the parties an adequate opportunity to press their previously filed objections, to assert additional objections, and to request the opportunity to depose the IME. The hearing on May 15, 2001, afforded both parties adequate due process to be heard concerning the IME's report.

¶ 14 The only record of the May 15 hearing presented for review is the Order Awarding Temporary Total Disability Benefits. Apparently, neither the parties nor the court requested that a stenographic record be made of the May 15 hearing. The Order Awarding Temporary Total Disability Benefits does not reflect that any objections were pressed and does not purport to rule on the filed written objections. The absence of such matters from the order—the only record of the hearing—must be interpreted to mean that no objections were pressed and, therefore, any objections were waived.

¶ 15 The Order Awarding Temporary Total Disability Benefits similarly does not expressly reflect that the IME's report was admitted into evidence. However, the report was the subject of the hearing and the Order does make two medical findings that are not addressed in the medical reports of either party—aggravation of a pre-existing condition and tendinitis in the left hand. It is obvious that the trial court considered the IME's report and, in the absence of a record showing the contrary, it is presumed that the trial court's judgment was responsive to evidence submitted. *Red Rock Petroleum Co. v. City of Choctaw*, 1984 OK CIV APP 45, ¶ 18, 689 P.2d 1286, 1289.

¶ 16 The *Red Rock Petroleum* case involved a record problem similar to the instant case. Like *Red Rock Petroleum*, "There is no transcript of the hearing. The record presented ... on appeal is devoid of any written or otherwise recorded stipulations [and] there are no exhibits [pertaining to the IME report]." *Id.* at ¶ 16, 689 P.2d at 1288–89. The appellate court in *Red Rock Petroleum* observed that "[a] trial court is under no sua sponte duty to make or preserve a verbatim or other itemized record." *Id.* at ¶ 17, 689 P.2d at 1289. The appellate court further observed that "[i]t is presumed that the trial court acted properly and did all things necessary to sustain the proceedings. [And if] the record does not contain any evidence to support the alleged error, a presumption arises that the judgment was responsible to the proof." *Id.* at ¶ 18, 689 P.2d at 1289 (citations omitted).

¶ 17 We further note that the IME's report was obviously presented to and considered by the three-judge panel. This is evident from the dissenting opinion in the three-judge panel's order that makes specific reference to "THE COURT APPOINTED INDEPENDENT MEDICAL EXAMINER'S CONCLUSION THAT CLAIMANT'S TENDONITIS IS A RESULT OF HER ADMITTED THUMB INJURY."

¶ 18 Significantly, the Notice of Intent to Appeal and Assignment of Error filed by Employer and Insurance Carrier to obtain review by the three-judge panel did not contain an objection to the IME's report on the ground it was not admitted by the trial court. Equally significant is the absence of any complaint that the IME's report was not competent or probative of the matters addressed. The only errors assigned by Employer and Insurance Carrier concerned (1) the appointment of the IME after submission, (2) a general assertion that the award was inconsistent with the evidence, was against the clear weight of the evidence and contrary to law, (3) a non-specific challenge to the finding of injury to the left hand and an aggravation of a pre-existing condition, and (4) a complaint about an open order for temporary total disability based on the totality of the record.

¶ 19 Like the May 15 hearing before the trial court, the only record of the proceeding before the three-judge panel is the majority order affirming the trial court's award and the dissenting opinion by one member of the three-judge panel. Like the May 15 hearing, apparently neither party nor the three-judge panel requested a stenographic record be made. The majority order and dissenting opinion—the only record of the proceeding—reflect that (1) the evidence was weighed, including the IME's report, and (2) the legal challenges presented by Employer and Insurance Carrier were considered. The majority of the three-judge panel determined the trial court's order was not against the clear weight of the evidence nor contrary to law.

■ ¶ 20 Once again, like the *Red Rock Petroleum* case, "There is no transcript of the hearing. The record presented ... on appeal is devoid of any written or otherwise recorded stipulations [and] there are no exhibits [pertaining to the IME report]." As in the case of the trial court, this court must presume the three-judge panel "acted properly and did all things necessary to sustain the proceedings, [and particularly] that the [panel's] judgment was responsive to the proof." The record on appeal is simply inadequate to allow for this court to determine whether the three-judge panel committed any error in rejecting the challenges by Employer and Insurance Carrier based on a lack of evidentiary support for the award.

¶ 21 The only remaining issue that must be decided concerns the portion of the award that directs the payment of temporary total disability "UNTIL LIGHT DUTY BECOMES AVAILABLE." In their Notice of Intent to Appeal to the three-judge panel, Employer and Insurance Carrier contended that this "open Order for TTD [was error] based on the totality of the record." Unlike the other errors involving consideration of the evidence, this assignment of error also presents a question of law.

¶ 22 In reviewing the record, we find that no issue was ever raised concerning Claimant's eligibility for "light duty" with Employer. In fact, the uncontroverted evidence is that Claimant was discharged for unsatisfactory performance of a "light duty" assignment. It is not clear what the trial court intended by including the light duty provision in the award, but it is at most a harmless surplusage. The controlling factor is the continuation of temporary total disability during the provision of "further medical treatment, care and attention [other than surgery]." The duration of such temporary total disability is expressly controlled by statute and court rule, which generally limit TTD to 52 weeks, or until maximum medical improvement is achieved. Rather than make the award too indefinite for review, the "light duty" provision harmlessly addresses a circumstance that is no longer relevant in the relationship between Claimant and Employer.

¶ 23 Finding no error, the majority order of the three-judge panel, affirming the trial court's award, is SUSTAINED.

¶ 24 TAYLOR, P.J., and STUBBLEFIELD, J., concur.